IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTOPHER JOSEPH QUAGLIN, | : |
| | : |
| Petitioner, | : |
| | : |
| v. | :   Civil Action No. 1:22cv01154-TNM |
| | : |
| MERRICK GARLAND, et al., | : |
| | : |
| Respondents. | : |

**CONSOLIDATED BRIEF IN REPLY TO PETITIONER'S
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT,
IN OPPOSITION TO PETITIONER'S EMERGENCY MOTION FOR
PRELIMINARY INJUNCTION, AND IN OPPOSITION TO PETITIONER'S
CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Respondent Ted Hull ("Hull"), Superintendent of the Northern Neck Regional Jail ("NNRJ"), by counsel, hereby replies to Petitioner Christopher Quaglin's ("Quaglin") Opposition (Docs. 27 and 28) to Respondent's Motion for Summary Judgment (Doc. 17), opposes Quaglin's Emergency Motion for Preliminary Injunction and Request for Hearing (Doc. 26), and opposes Quaglin's Cross Motion for Partial Summary Judgment (Docs. 27 and 29). Hull relies on his principal brief with regard to the facts of Quaglin's incarceration at NNRJ through late May 2022 and the attendant legal arguments, and updates the Court as to Quaglin's current situation and NNRJ's continued adherence to constitutional requirements.

Put simply, this is where Quaglin finds himself:  Quaglin complains that he has not received adequate medical care and has lost weight, yet he refuses to undergo diagnostic tests ordered by the gastroenterologist to diagnose his digestive issues.  Quaglin receives a gluten free diet developed by registered dieticians, yet he refuses to eat and categorically rejects every effort the NNRJ kitchen has made to accommodate his concern with cross contamination.  Quaglin

complains that he has no access to his attorney, yet he omits their ability to communicate in person, on the phone, and through the mail.

With regard to housing, Quaglin complains about "solitary confinement," yet from May 11, 2022 through August 12, 2022 he was either in the general population or an honor pod. Quaglin now complains about being in a medical cell, yet he is there at the jail physician's directive solely out of concern for Quaglin's weight loss, refusal to eat, and health. In effect, Quaglin presents Hull and NNRJ with a constitutional "Catch-22." In attending to Quaglin's health, Hull stands accused of deliberate indifference, and Fifth and Eighth Amendment violations. *See e.g., Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008) (holding, "we will not create this sort of constitutional Catch 22 – where prison officials violate the Eighth Amendment if they don't segregate a prisoner but violate the Due Process Clause if they do.").

Quaglin's attempt to paint many aspects of his incarceration at NNRJ as unconstitutional is controverted by the record and fails to place in dispute any genuine issue of material fact.

## I. REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

### A. Quaglin is not prejudiced by the Court's use of its discretionary power to deem Hull's response a Motion for Summary Judgment.

This Court has the inherent discretionary power to consider Hull's initial response to Quaglin's Petition for Writ of Habeas Corpus and Complaint as a Motion for Summary Judgment. *See Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936) (noting "the power inherent in every court to control the disposition of the causes on its docket with economy and time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weight competing interests and maintain an even balance.").

Further, Quaglin has not been prejudiced by the Court's determination. *See Russell v. Harman Int'l Indus.*, 773 F.3d 253 (D.C. Cir. 2014) (holding that the district court's failure to comply with the procedural safeguards of Fed. R. Civ. P. 12(d) regarding conversion of a motion to dismiss to a motion for summary judgment does not constitute reversible error if the parties were not prejudiced.) Hull's June 7, 2022 response addressed *ad seriatum* each of Quaglin's contentions regarding his incarceration at NNRJ from December 21, 2021 through late May 2022. In support, Hull provided hundreds of pages of certified jail records. Hull laid out for plaintiff and his counsel a roadmap of each fact material to Quaglin's claims and the relevant evidence. Plaintiff has had three months to digest, and respond to Hull's response. Quaglin has also had the opportunity to, and indeed has presented his own evidence. Yet, as established below, Quaglin cannot demonstrate a genuine issue of material fact sufficient to prevail on his constitutional claims. As such, he has not been prejudiced by the Court's decision. *See Russell*, 773 F.3d at 257 (holding plaintiff "suffered no prejudice" from the court's converting the motion "because even had he obtained his now-desired discovery, he could not demonstrate a 'genuine issue of material fact'…"). *See also Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003) (holding that even if denied the opportunity to present additional evidence, the error was harmless because the plaintiff "could have suffered prejudice only if the failure of the court to convert the proceeding prevented it from coming forward with evidence sufficient to create a substantial question of fact material to the governing issues of the case," … "evidence upon which a reasonable trier of fact could have found" a constitutional violation); *Gomez v. Trustees of Harvard Univ.*, 676 F. Supp. 13 (D.D.C. 1987) (allowing late-filed motion for summary judgment absent prejudice to the plaintiff).

The Court properly used its discretionary power to consider Hull's response as a Motion for Summary Judgment.

### B. Plaintiff cannot establish the futility of the NNRJ grievance process.

Quaglin continues to claim that the NNRJ grievance process is broken and remains an exercise in futility.[1] However, from June 1, 2022 through August 30, 2022, Quaglin filed 113 Inmate Request Forms. During that same period Quaglin filed 28 grievances. *See* Ex. 1, Hull Supplemental Aff.; Ex. 2, Grievance Log. Plaintiff cannot dispute that Inmate Request Forms and Grievance forms were made available to him.

Next, the Grievance Log tracking Quaglin's 28 grievances filed over the last three months reveals instances where he chose not to appeal the initial responses, instances where he indicated that he chose to appeal the initial response or the major's review, but did not, and a few instances where he appealed to Superintendent Hull. Except for appeals that remain in progress, Quaglin's grievances and appeals all have been responded to by the appropriate NNRJ official. *See* Ex. 1, Hull Supplemental Aff; Ex. 2, Grievance Log. It is axiomatic that, "[e]ven if an inmate believes that seeking administrative relief from the prison would be futile and even if the grievance system cannot offer the particular form of relief sought, the prisoner nevertheless must exhaust the available administrative process." *Kaemmerling v. Lappin*, 553 F.3d 669 (D.C.Cir. 2008) (citing *Booth v. Churner*, 532 U.S. 731, 739, 741   (2001)). As the Grievance Log reflects, Quaglin has failed to exhaust the available administrative remedies with regard to each of his grievances.

---

[1] In June 2022, when Hull initially responded, and as supported by the evidence at that time, Quaglin had not exhausted his administrative remedies. Of 12 grievances he filed between December 21, 2021 and the end of May, Quaglin purported to appeal only one to Hull, but instead ceded any further discussion to his attorney. (Doc. 17, p. 7)

Further, Quaglin's grievances are repetitive. On July 14, 2022, NNRJ Deputy Superintendent Lewis informed Quaglin in writing that grievances concerning certain issues would no longer be accepted, as many of his grievances "regarded issues already addressed by the grievance process." Lewis continued:

> You choose to not appeal through the Superintendent the initial responses related to these items, yet continue to write grievances related to them. If you are not satisfied, seek whatever relief you deem necessary.
> 1- Generalized complaints about your tray being cross contaminated or complaints centered around your lack of trust that the diet provided is not gluten free. If you receive a tray and have a specific complaint about an item, please notify Mr. Barnes for us to look into and address if necessary.
> 2- Complaints related to your request to be moved to another facility.
> 3- Requests to contact your attorney or notices that NNRJ or the Superintendent will be dealing with your attorney.

*See* Ex. 3, July 14, 2022 Letter.

Quaglin appears to believe that because he does not get his desired response, the system itself is broken. There is no evidence of that. By way of example, Quaglin's grievances have resulted in the kitchen's taking extraordinary care to avoid cross contamination of his food trays. The system works and Quaglin, like all inmates, is required to exhaust his administrative remedies.

### C. Plaintiff cannot establish a genuine issue of material fact regarding his deliberate indifference claim.

There is no genuine issue of material fact regarding Quaglin's claim of deliberate indifference to his medical needs. First, it is undisputed that Dr. Dudley referred Quaglin to a GI specialist to investigate and confirm Quaglin's self-reported celiac disease and gluten intolerance. *See* Ex. 4, Dudley Aff. Diagnosis of this disorder requires appropriate lab work and tests. *See generally United States v. Atkinson*, 2:18-cr-00225-17, 2021 U.S. Dist. LEXIS 46263 (S.D.W.Va. Mar. 11, 2021) (denying inmate's compassionate release during COVID crisis based

on health issues including self-reported celiac disease where FBOP had not independently confirmed diagnosis and was providing gluten free tray and menu options in the interim). NNRJ has not delayed the diagnosis or withheld care; rather, Quaglin has refused care. As reflected in Quaglin's medical records and set forth in Dr. Dudley's affidavit, the GI specialist has scheduled Quaglin for multiple diagnostic tests and Quaglin has refused the necessary dietary preparations. *See* Ex. 5, Additional Medical Records[2]; Ex. 4, Dudley Aff. As an inmate, Quaglin has no constitutional right to dictate his medical care or food choices. Courts have often stated that prisons are not required to provide, and "inmates should not expect, the 'amenities, conveniences and services of a good hotel.'" *Lewis v. W. Reg'l Jail*, No. 3:11-cv-01016, 2012 U.S. Dist. LEXIS 121135, 2012 WL 3670393, at *11 (S.D.W.Va. July 24, 2012) (quoting *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir.1988)).

Second, NNRJ provides Quaglin with three gluten free trays a day, prepared according to the TSG gluten free diet developed by registered dieticians. *See* Ex. 6, Barnes Aff. Quaglin's trays are prepared separately, using separate utensils, his trays are individually covered, placed separately on the carts, and kitchen supervisors photograph the trays before they leave the kitchen to further ensure they are not cross contaminated. *Id*. Despite the kitchen's painstaking efforts to avoid cross contamination, Quaglin refuses to eat. Further, Quaglin continues to purchase food items from the commissary, many of which are not labelled as gluten free. *Id*.

### D. Plaintiff cannot establish a genuine issue of material fact regarding his Fifth/Eighth Amendment claims relating to "solitary confinement."

Quaglin continues to maintain that he is being held in "solitary confinement," as it appears that he prefers to be in the general population with its attendant conditions. Given the

---

[2] For privacy reasons, Quaglin's recent medical records attached hereto do not include progress notes because of the mental health progress notes contained therein.

circumstances, Hull disputes Quaglin's terminology. As explained in Hull's initial brief, from December 21, 2021 through May 2022, Quaglin was at times removed from the general population when he was in pre-trial detention or disciplinary segregation.

More recently, from May 11, 2022 until August 12, 2022, Quaglin was continuously housed in the general population and was even housed for a stint in the honor pod until he incurred another disciplinary action, except for one day when he was in medical housing ahead of a doctor's appointment. *See* Ex. 1, Hull Supp. Aff. On August 12, 2022, due solely to concern that Quaglin was refusing his food trays, not eating, and continuing to lose weight, Dr. Dudley had Quaglin moved into medical housing where medical personnel can more closely observe him. *See* Ex. 4, Dudley Aff. Dr. Dudley's decision was not unconstitutional. *See Keller v. County of Bucks*, 209 Fed. Appx. 201, 205-06 (3rd Cir. 2006) (holding plaintiff's placement in isolation in medical housing following a medical determination that it was in his best interest to be removed from the general population not unconstitutional) (citing *Hutto v. Finney*, 437 U.S. 678, 686 (1978) (" It is perfectly obvious that every decision to remove a particular inmate from the general prison population for an indeterminate period could not be characterized as cruel and unusual.")).

### E. Plaintiff cannot establish a genuine issue of material fact regarding his Sixth Amendment claims.

Quaglin's insisting that Hull has cut off Quaglin's communication with his attorney is a prevarication. Quaglin is able to communicate with counsel through in person visits, telephone calls, and letters. Quaglin and his counsel's use of videoconferencing was subject to the NNRJ rule that bars the recording of attorney video visits. Quaglin's counsel ignored the rule when he posted recordings of their visits to social media and was thereafter not permitted video visitation. (Doc. 17-12, 17-21, 17-23)

## II.     OPPOSITION TO EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

"A preliminary injunction is an extraordinary remedy never awarded as of right" that a court must grant only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24 (2008). To make a sufficient showing, a plaintiff must establish: (1) a likelihood of success on the merits; (2) that irreparable harm will result in the absence of an injunction; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Id.* at 20.

In this Circuit, "the movant has the burden to show that all four factors, taken together, weight in favor of the injunction." *Abdullah v. Obama*, 753 F.3d 193, 197, 410 U.S. App. D.C. 80, 84 (D.C.Cir. 2014) (citations and internal quotation marks omitted). "The four factors have typically been evaluated on a 'sliding scale.'" *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291, 387 U.S. App. D.C. 205, 208 (D.C.Cir. 2009). Under this sliding-scale framework, "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Id.* at 1291-92, 387 U.S. App. D.C. at 208.[3] Supt. Hull disputes Quaglin's ability to establish any of the four factors.

First, Quaglin does not have a likelihood of succeeding on the merits. As addressed and supported by the evidence in Hull's previous brief (Doc. 17) and above, the record before the Court overwhelmingly counters and defeats Quaglin's constitutional claims. There is no

---

[3] This Court has noted that "it is not clear whether" the D.C. Circuit's "sliding-scale approach to assessing the four preliminary injunction factors survives the Supreme Court's decision in *Winter*." *Banks v. Booth*, No. 20-849 (CKK), 2020 U.S. Dist. LEXIS 68287, *16-17 (D.D.C. Apr. 19, 2020) (citing *Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112 (D.D.C. 2015)). "Several judges on the D.C. Circuit have 'read *Winter* to at least suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction …. However, the D.C. Circuit has yet to hold definitively that *Winter* has displaced the sliding-scale analysis." *Id*. (citations omitted).

evidence of deliberate indifference to Quaglin's health and safety in violation of Quaglin's Fourteenth Amendment right to due process, nor is there evidence that Quaglin's First, Fifth, Sixth, or Eighth Amendment rights have been violated.

Second, Quaglin will not suffer irreparable harm if denied injunctive relief. At the risk of being redundant, Quaglin has had consistent medical care. He has been followed by NNRJ Medical Director Dudley and medical staff. He has been referred to a gastrointestinal specialist who has consulted with him multiple times, ordered labs and diagnostic tests, and continues to address his health issues, although Quaglin refuses to prep for the tests. Quaglin has been provided with a gluten-free diet, and every effort is made to prevent cross contamination. It is Quaglin who has unilaterally determined that his trays are contaminated, is on a "tray strike," refuses meals, and by choice consumes only food ordered from the commissary. Concerned about Quaglin's weight loss, Dr. Dudley has placed Quaglin in medical housing so that he can be closely observed. These actions hardly lead to irreparable harm. Further, Quaglin has no constitutional right to be assigned the housing of his choice or to an environment more conducive to preparing for trial. Moreover, Quaglin's criminal activity is the cause of any hardship resulting from his being separated from his family.

Finally, the balance of equities weighs in favor of Supt. Hull and an injunction is not in the public's interest. Quaglin asserts that the public has an interest in his release because he has been unfairly detained for 16 months. In response, Supt. Hull once again relies on the Circuit Court for the District of Columbia's affirming this Court's Pre-trial Detention Order in *United States v. Quaglin*, 851 Fed. Appx. 218 (D.C.Cir. June 24, 2010):

> [A]ppellant has not demonstrated that the district court clearly erred in finding that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community… As shown in video recordings and social media posts proffered by the government, appellant admitted to participating in violence in furtherance of his political beliefs in the months leading up to January 6, 2021. In addition, prior to January 6, appellant made plans to participate in violent conduct at the Capitol on that date, and he encouraged others to join him in that conduct (and to plan for violence and to bring weapons). During the incident itself, appellant shoved and struck multiple police officers outside the Capitol, and he discharged MK-9 OC spray at police officers, including directly into the unprotected face of one officer. Appellant was also on the front line of a group of individuals attempting to violently force their way inside the Capitol by physically overcoming a defensive line of police officers. In the aftermath of the incident, appellant posted videos to social media accounts celebrating his role in the violence. Furthermore, the district court did not clearly err in concluding that appellant's social media posts suggest that he is affiliated with and has communicated with the Proud Boys, many of whose members have also been indicted for participating in violence on January 6.

*Id*. at 219 (internal citation omitted).

Further, the public's purported interest in Quaglin's immediate release surely cannot rise above his own apparent disinterest. Hull notes Quaglin's recent motion to continue his criminal trial originally set for October, and his refusal to engage other counsel, notwithstanding the Court's noting, "If you stay with Mr. McBride, you may well end up [in jail] for another six months before you have a trial." WUSA 9, August 12, 2022, *Judge scolds Jan. 6 attorney for missing deadlines, hearings – but agrees to delay high-profile trial*. *See United States v. Quaglin*, No. 1:21-cr-00040-TNM-4 (Doc. 406 Motion for a Continuance; Minute Entry 8/8/22 (granting motion); and Minute Entry 8/16/22 (setting 4/10/23 trial date)).

Quaglin cannot satisfy his burden on any one of the four factors requisite to preliminary relief.

### III. OPPOSITION TO CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

**A. Opposition to Statement of Undisputed Facts**

1. Hull disputes that Quaglin has exhausted his administrative remedies. (Doc. 17-1, 17-2, 17-3; Ex. 2, Grievance Log)

2. Hull disputes that the NNRJ grievance process is irreparably broken and an exercise in futility. (Doc. 17-1, 17-2, 17-3; Ex. 2, Grievance Log)

3-6. Hull has no knowledge of Quaglin's discovery materials being delivered by his counsel to the D.C. Jail in September 2021. Further, since Quaglin's incarceration at NNRJ, no discovery materials have been received by or delivered to NNRJ. Thus, Hull disputes that he has failed to deliver Quaglin's discovery materials and deprived him of the right to participate in his defense, disputes that he has admitted responsibility for locating and delivering Quaglin's discovery materials, and disputes that he has taken no action to provide Quaglin with his discovery materials. (Doc. 17-12, ¶ 16)

7-10. Hull disputes that Quaglin has been or is in solitary confinement. Quaglin has been housed in the general population, except for limited periods in pre-hearing detention or disciplinary segregation due to institutional rules infractions. (Doc. 17-12, ¶ 8). When Quaglin began to refuse all food trays and suffered additional weight loss, NNRJ Medical Director Dudley directed on August 12, 2022 that Quaglin be placed in medical housing to allow for medical observation. (Ex. 4, Dudley Aff.)

11-13. Hull disputes that Quaglin is being punished, mistreated, or retaliated against in violation of his rights as a pre-trial detainee. ((Doc. 17-12, ¶ 10-11, 17-14-, 17-15, 17-6, 17-17, 17-18; Ex. 7, July/August 2022 Disciplinary Offense Reports; Ex. 1, Hull Supp. Aff.; Ex. 4, Dudley Aff.; Ex. 6, Barnes Aff.)

**B. Plaintiff is not entitled to summary judgment on his Sixth Amendment claim that he has not been provided discovery.**

Quaglin claims that discovery materials were delivered by his attorney to the D.C. Jail in September 2021 and alleges that Hull has failed to provide those materials to him. Quaglin has failed to produce evidence to dispute Hull's attesting that no discovery materials have been mailed or delivered to NNRJ. Quaglin offers no basis for summary judgment on his Sixth Amendment claim.

**C. Plaintiff is not entitled to summary judgment on his request for injunctive relief banning the use of solitary confinement.**

Quaglin seeks an injunction banning the use of what he terms "solitary confinement." In response, Hull relies on his arguments set forth above in establishing that Quaglin is not being held in solitary confinement, rather he is in medical housing because of Dr. Dudley's concern for his health. As addressed, Quaglin fails to offer the Court any basis for preliminary injunctive relief.

**IV.   CONCLUSION**

For these reasons and those set forth previously, Respondent Superintendent Ted Hull respectfully requests this Court to dismiss Petitioner's Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (Doc. 1), to deny Petitioner's Emergency Motion for Preliminary Injunction and Request for Hearing (Doc. 26), and to deny Petitioner's Cross Motion for Partial Summary Judgment (Docs. 27 and 29).

SUPERINTENDENT TED HULL

By: _____/s/_____
Of Counsel

Jeff W. Rosen, Esq., D.C. Bar No. 383153
PENDER & COWARD, P.C.
222 Central Park Avenue, Suite 400
Virginia Beach, VA 23462
Phone: (757) 490-6253
Fax:     (757) 497-1914
jrosen@pendercoward.com
*Counsel for Hull*

## CERTIFICATE OF SERVICE

 I hereby certify that on this 6th day of September, 2022, I will electronically file the foregoing ***Consolidated Brief In Reply To Petitioner's Opposition To Motion For Summary Judgment, In Opposition To Petitioner's Emergency Motion For Preliminary Injunction And Request For Hearing, and In Opposition to Petitioner's Cross Motion for Partial Summary Judgment*** with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) to the following:

| | |
|---|---|
| Joseph D. McBride, Esq. (NY Bar #0403)<br>THE MCBRIDE LAW FIRM, PLLC<br>99 Park Avenue, 6th Floor<br>New York, NY 10016<br>Phone: (917) 757-9537<br>jmcbride@mcbridelawnyc.com<br>*Counsel for Petitioner* | Stephanie R. Johnson, Esq. (D.C. Bar #1632338)<br>Assistant United States Attorney<br>601 D Street, N.W.<br>Washington, D.C. 20530<br>Phone: (202) 252-7874<br>Stephanie.Johnson5@usdoj.gov<br>*Counsel for Garland* |

                /s/
               Jeff W. Rosen, Esq., D.C. Bar #383153
               PENDER & COWARD, P.C.
               222 Central Park Avenue, Suite 400
               Virginia Beach, VA 23462
               Phone: (757) 490-6253
               Fax:     (757) 497-1914
               jrosen@pendercoward.com
               *Counsel for Hull*