## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF THE DISTRICT OF COLUMBIA

—————————————————————
                                                          )
CHRISTOPHER JOSEPH QUAGLIN                                 )
     Portioner,                                          )
                                                          )
     v.                                                  )     Civ. No. 22-cv-01154 TNM
                                                          )
MERRICK GARLAND, ET AL.,                                  )
     Respondent.                                         )
—————————————————————  )

## PETITERNER'S CONSOLIDATED BRIEF IN REPLY TO REPSONDENT HULL'S BRIEF IN OPPOSITION TO PETITIONER'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION, AND BRIEF IN REPLY TO RESPONDENT HULL'S OPPOSITION TO PETITIONER'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

       Comes now Petitioner Christopher Quaglin, by counsel, files this Consolidated Brief in

Reply to Respondent Hull's Opposition to Petitioner's Emergency Motion for Preliminary

Injunction, and Brief in Reply to Respondent Hull's Opposition to Petitioner's Cross Motion for

Partial Summary Judgment.

### PROCEDURAL HISTORY

       On April 26, 2022, Quaglin filed his Petitioner for writ of habeas corpus naming Hull and

Attorney General Garland as Respondents.  ECF No. 2. The Court subsequently dismissed

Garland, leaving Hull as the sole Respondent.  ECF No. 25.  On June 6, 2022, Hull filed his

unspecified "Response to Petition for Writ of Habeas Corpus."  ECF No. 17.  By Minute Order

dated June 23, 2022, the Court, *sui sponte*, converted the "Response" into a "Motion to Dismiss."

Quaglin filed an opposition, arguing that the Motion to Dismiss should be denied because it relied

on factual disputes.  ECF No. 22.  The Court agreed, but instead of denying Hull's motion, on

August 16, 2022, the Court, again *sui sponte*, converted the "Response" into a Motion for

Summary Judgment to which Quaglin had to now respond a second time.  ECF No. 25.

On August 25, 2022, Quaglin filed his opposition to the Response-turned-motion for summary judgment and a Cross Motion for Partial Summary Judgment (ECF No. 27), but two days earlier, on August 23, 2022, Quaglin was forced to file an Emergency Motion for Preliminary Injunction (ECF No. 26).  On September 6, 2022, Hull filed a consolidated brief replying or opposing Quaglin's three pending motions: (1) Reply to Petitioner's Opposition to Hull's Motion for Summary Judgment; (2) Opposition to Petitioner's Emergency Preliminary Injunction; and (3) Opposition to Petitioner's Cross Motion for Partial Summary Judgment.

This brief serves as Quaglin's Replies to the latter two.

## I.      REPLY TO HULL'S OPPOSITION TO PETITIONER'S EMERGENCY MOTION TO PRELIMINARY INJUNCTION

### A.      Hull fails to show that Quaglin is not entitle to relief on the merits

Quaglin's Emergency Motion for Preliminary Injunction (ECF No. 26) argued that Quaglin is likely to succeed on the merits of his numerous allegations of constitutional violations.  In Hull's Opposition to the Emergency Motion for Preliminary Injunction, Hull dedicates a single conclusory line to address the "likelihood of success" factor, simply stating, "as addressed and supported by the evidence in Hull's [Motion for Summary Judgment] and above, the record before the Court overwhelmingly counters and defeats Quaglin's constitutional claims."  ECF No. 30 at 8.  But as Quaglin's previous brief, ECF No. 27, shows, Hull's "evidence" is comprised mostly of a self-serving affidavit from Hull, and is at best in dispute, but more often, is overwhelmed by evidence to the contrary supporting Quaglin's allegations.

*1.      The record clearly shows that Quaglin exhausted the remedies available to him and that the grievance system is irreparably broken.*

In his Statement of Material Facts (ECF No. 27 at 4), Hull himself cites one example when Quaglin engaged the complete grievance process all the way to Hull himself, who is the "FINAL"

decisionmaker, but to no avail.  But the documents provided by Hull in his recent motion show further examples.  According to the grievance log, between June and August alone, 19 of Quaglin's appeals were appealed to the superintendent.  *See* ECF 30-1 at 2, 3, 4, 5, 6, 7, 8, 9, 10.  On March 9, 2022, Hull said that the grievance process would be fast tracked directly to him (ECF No. 2 ¶ 88) and again on April 26, 2022, when Quaglin wrote directly to Hull, "from now on you will be dealing with my lawyer Joseph McBride directly," to which Hull responded, "So noted.  I am somewhat familiar with your attorney and look forward to hearing from him.  I think this is the best course of action" (ECF No. 17-3).  As the "FINAL" decisionmaker, Hull had the authority to fast track the grievance process, and he did so.  It is indisputable that Quaglin brought his grievances to Hull, the "FINAL" decisionmaker, and Hull denied his requests, thereby exhausting the available remedies.  Based on the record, Hull cannot possibly succeed on the merits of this allegation.

The contemptuous, hostile, and threatening tone of Hull's emails when dealing with Quaglin's lawyer regarding Quaglin's grievances shows that Quaglin has a likelihood of success on the issue of whether the system is irreparably broken.  *See, e.g.,* ECF ¶¶ 70, 88.

### 2. *The record shows that the Jail is not strict with Quaglin's diet, and he has been served gluten on multiple occasions.*

Hull insists that the Jail is careful to provide a strict gluten free diet to Quaglin, but the record shows otherwise.  By way of example, on April 9, 2022, Quaglin complained that he suspected that his food had been cross contaminated, to which the Jail admitted to its negligence and responded that "any exception you have brought to our attention has been addressed."  But the problem was clearly not addressed as just five days later, on April 14, 2022, Quaglin documented that he found "pieces of [food from other] other trays in my tray," *i.e.,* his food had obviously been

cross contaminated, yet the Jail once again just responded "any exceptions have been rectified once we were aware."

### 3.  Hull admits that he has done nothing to locate and deliver the missing discovery materials.

Hull does not deny that the prison system received Quaglin's missing discovery materials and admits that he has no idea as to their whereabouts.  Hull even once said that he would "check on discovery" (ECF No. 2 ¶ 92) but never followed up.  In his affidavit, he admits by omission that he did not make even the slightest effort to locate the materials.  ECF No. 17-12 ¶ 16.

It is undisputed that Quaglin's attorney delivered them to the DC Jail, and it is undisputed that Quaglin never received them.  ECF No. 27-2.  Hull cannot evade responsibility for the whereabouts of the discovery materials as this Court has already held that Hull is the immediate custodian, to the exclusion of all other custodians, including the Attorney General, the DC Jail, or the United States Marshals.   Hull is solely responsible for Quaglin and for his belongings, and if the materials were lost in transit or intentionally destroyed, it is Hull's responsibility. His lack of interest in making even the slightest effort to remedy this grave constitutional violation that will severely prejudice Quaglin at trial is *prima facie* evidence of a violation of Quaglin's constitutional rights, and Hull does not present any evidence to the contrary, only excuses.

### 4.  Hull cannot and does not dispute that he has stubbornly refused to recognize Quaglin's pretrial detainee status.

Hull does not cite to any law or fact to dispute that he unlawfully refuses to recognize the important distinction between pretrial detainee and convicted inmate.  Quaglin cites both fact and law: the black letter law that a pretrial detainee cannot be subjected to the same punishments as convicted inmates, and the undisputed fact that Hull, in email correspondence with Quaglin's attorney, refused to recognize Quaglin's status or that Quaglin is entitled to a different standard of

treatment than a convicted inmate.  Hull does not dispute that Quaglin is treated like an inmate, and readily admits that he subjects Quaglin to punishment, and never event attempts to show that the prison punishes pretrial detainees differently from convicted inmates.

Hull's presents no opposition to this allegation, and therefore Quaglin is likely to succeed on the merits.

### 5. Hull admits that he punished Quaglin by depriving him of video conferencing access with his attorney.

Quaglin is also likely to succeed on the merits of his claim regarding the deprivation of his ability to communicate via video conference with his attorney because Hull blatantly admits to this allegation.  Hull argues that he was allowed to punish Quaglin by depriving of his constitutional right to access to his attorney because Quaglin's attorney allegedly broke a rule by posting to social media a video revealing the deplorable conditions of confinement at the Jail.  Hull cites no authority that allows him to impose such a harsh punishment – the indefinite deprivation of a constitutional right - for a small infraction, not even by the prisoner, but allegedly by the prisoner's attorney.  Hull provides no evidence that this punishment served any governmental interest or that it was anything but retaliation for a social media post that shined a negative light on the Jail.  Accordingly, Quaglin is likely to succeed on the merits.

### 6. Quaglin is likely to succeed on his First Amendment retaliation claim.

Hull states, "NNRJ did not take adverse action against Quaglin because he engaged in protected conduct," ECF No. 17 at 18, but elsewhere Hull admits that is exactly what they did.  "Quaglin's counsel ignored the rule when he posted recordings of their visits to social media and was thereafter not permitted video visitation."  ECF 30, at 7.  In other words, the Jail took the adverse action of depriving Quaglin of video visitations with his attorney because of an expression of speech.  As the Jail admits to this allegation, Quaglin is likely to succeed on the merits.

### 7.    *Quaglin has been punished with solitary confinement.*

Knowing that he is not permitted to subject a pretrial detainee to solitary confinement, Hull does not like to use the term "solitary confinement," so instead he calls the practice "punitive detention" (ECF No. 17 at 14), "punitive isolation" (ECF No. 17 at 16), or "disciplinary segregation" (ECF No. 30 at 11). But by whatever name, the practice is the same: the prisoner is confined in solitude. Hull admits to subjecting Quaglin to this practice. *E.g.,* ECF No. 30 at 11.

### B.    Hull fails to show that Quaglin will not suffer irreparable harm.

Separate from the first factor of whether he will succeed on the merits, the next factor requires the court to separately consider the potential harm the movant will suffer if he is denied relief. From the record, it is obvious that Quaglin will suffer substantial irreparable harm if he is denied release to the custody of his wife.

It is undisputed that celiac disease is serious and can cause irreparable harm in the form of serious bodily injury or death. It is also undisputed that a human being can starve to death without proper nutrition. The record clearly shows that Quaglin is not eating and has already lost 45 pounds, 10 in the last few weeks.

Hull does not dispute that the denial of access to discovery materials will obviously cause prejudice at trial; nor does he dispute that solitary confinement causes irreparable psychological and physical injuries and that it makes it impossible to prepare for trial.

Hull argues that "Quaglin's criminal activity is the cause of any hardship resulting from being separated from his family," once again demonstrating that he already considers Quaglin to be guilty of criminal activity, though Quaglin has never been tried and according to our system he is innocent until proven guilty. But Hull does not dispute that Quaglin and his family are suffering hardship, particularly Quaglin's son who has lived without a father since he was eight weeks old,

and Quaglin's father-in-law who recently suffered a tragic accident and needs the support of his daughter and son-in-law more than ever.

As the harm to Quaglin's health, the prejudice he will suffer at trial, and the trauma endured by his family is obvious, the second factor weighs heavily in Quaglin's favor.

### C.    Hull ignores the balance of equities factor.

Hull's brief completely ignores the third factor of the balance of equities because the balance of equities weighs entirely in Quaglin's favor.   The Jail has no interest in detaining Quaglin, and Quaglin obviously has a substantial interest.

### D.    The sheer length of Quaglin's pretrial detention is unconstitutional and not in the public interest.

As mentioned in Quaglin's Emergency Motion, the sheer length of Quaglin's detention is unconstitutional, and the public has an interest in protecting its citizens constitutional rights.  Hull only "relies on the Circuit Court for the District of Columbia's affirming this Court's Pre-trial Detention Order in *United States v. Quaglin*, 851 Fed. Appx. 218 (D.C.C. June 24, 2010 [sic])." But this ruling was from June of 2021, before Quaglin even arrived at NNRJ and before the vast majority of the unlawful treatment alleged took place.  Since the ruling, Quaglin has been detained for over a year without trial.  Accordingly, as Hull's argument does not respond to Quaglin's argument, Quaglin's point remains unopposed.


## II.    REPLY TO OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT

### A.    Reply to Hull's opposition to statement of undisputed material facts:

1.    Hull disputes that remedies have been exhausted and that the grievance system is irreparably broken.  The admission by Hull that these facts are in dispute is fatal to Hull's Motion

for Summary Judgment (ECF No. 17), but they are not relevant to Quaglin's Cross Motion for Partial Summary Judgment because Quaglin is only seeking a declaration that the practice of subjecting pretrial detainees to solitary confinement is unconstitutional.  The grievance process has nothing to do with that issue.

2.      Hull does not dispute (1) Quaglin's attorney produced and delivered Quaglin's discovery materials to the DC Jail when Quaglin was confined there, at Quaglin's expense, reasonably expecting the materials to be delivered to Quaglin; (2) Quaglin never received his discovery materials; (3) Quaglin's attorney repeatedly requested the materials; (4) Hull said he would "check on the discovery;" (5) Hull made no effort to locate the materials; (6) Quaglin has never seen his discovery materials.

3.      Hull disputes that Quaglin has been or is in solitary confinement, but by Hull's own admission Quaglin has been in "punitive detention" (ECF No. 17 at 14), "punitive isolation" (ECF No. 17 at 16), or "disciplinary segregation" (ECF No. 30 at 11), which are all just different terms for solitary confinement.  Quaglin's affidavit states that he is confined in solitude (ECF No. 27-1).

4.      Hull disputes that Quaglin is being punished, mistreated, or retaliated against in violation of his rights as a pre-trial detainee, but the emails between Hull and Quaglin's counsel show that Hull made no distinction.

**B.      Quaglin is entitled to Summary Judgment on his Sixth amendment claim that he has not been provided his discovery.**

The record reflects, and Hull does not dispute, that the discovery materials were delivered to the DC Jail and that the DC Jail received them, but they were never delivered to Quaglin.  Hull is the primary custodian and as such it is his responsibility.  If he is not held accountable, then Quaglin has no recourse for relief for this violation of his fundamental right.  Therefore, Quaglin is entitled to Summary Judgment on this issue.

**C.     Quaglin is entitled to Summary Judgment on his request for an injunction against the use of solitary confinement against pretrial detainees.**

Hull does not dispute the extensive authorities that agree that solitary confinement should be banned.  As a pretrial detainee who has been placed in "punitive detention," "punitive isolation," "disciplinary segregation - or whatever other name Hull would like to refer to the practice of confining prisoners in solitude – and as there is a substantial likelihood that Quaglin will continue to be subjected to this practice, Quaglin is entitled to relief on this matter, and Hull presents no opposition.

## CONCLUSION

For the foregoing reasons and those set forth in previous briefings, Petitioner Quaglin respectfully requests this Court to grant Petitioner Quaglin's Emergency Motion for Immediate Pretrial Release, and grant Quaglin's Cross Motion for Partial Summary Judgment.

Dated: New York, NY
September 11, 2022

Respectfully submitted,

/s/ Joseph D. McBride, Esq.
Bar ID: NY0403
THE MCBRIDE LAW FIRM, PLLC
99 Park Avenue, 6th Floor
New York, NY 10016
p: (917) 757-9537
e: jmcbride@mcbridelawnyc.com
*Counsel for the Defendant*

Certificate of Electronic Service

I hereby certify that on August 10, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, with consequent service on all parties.

/s/ Joseph D. McBride, Esq.