## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

_____
                                                )
CHRISTOPHER QUAGLIN                )
      Petitioner,                            )
                                                )
      v.                                        )          Civ. No. 22-cv-01154 TNM
                                                )
GARLAND, ET AL.,                           )
      Respondent.                          )
_____ )

## PETITIONER'S MOTION TO ALTER OR AMEND ORDER GRANTING SUMMARY JUDGMENT TO RESPONDENT HULL

Comes now Petitioner Christopher Quaglin, by counsel, through counsel, and moves this Court to alter or amend its order granting summary judgment to Respondent Ted Hull, pursuant to Federal Rule 59(e), and states as follows.

## BACKGROUND

Petitioner assumes the Court is familiar with the facts of the case and cites here only facts pertinent to this motion seeking to alter or amend the Order granting summary judgment to Ted Hull.

On April 26, 2022, Petitioner Quaglin filed a Petition for writ of habeas corpus alleging, *inter alia,* that he had lost a substantial amount of weight while being held as a pretrial detainee at Northern Neck Regional Jail ("NNRJ" or the "Jail"), where Respondent Hull is the superintendent, due to the Jail's failure to properly provide a diet that accommodates Petitioner's celiac disease. *See* ECF No. 1, ¶ 69 ("[Quaglin] has lost 12 pounds in less than 10 days while under [Hull's] supervision and care."); ¶ 168 ("McBride referenced amongst other things, the fact that Petitioner had lost 25+ pounds in a matter of weeks and had his body had previously

covered in blisters."); ¶ 169 ("McBride notified Hull about multiple celiac-related complications and needless suffering that Petitioner was enduring at NNRJ, including the fact that Petitioner had lost 30 pounds of body weight.").  The Petition also alleges that NNRJ has unlawfully punished Quaglin as a pretrial detainee (*e.g.,* ECF No. 1 ¶¶ 82, 85), and has retaliated against him for challenging his conditions of confinement (*e.g.,* ECF No. 1 ¶¶ 70-76, 83).

On June 7, 2022, Respondent Hull filed an Answer to the Petition denying some, but not all of the allegations, containing 526 pages of material outside of the pleadings.  ECF No. 17. On June 23, 2022, the Court issued an order construing the Answer as a "Motion to Dismiss," without specifying which of Rule 12's different legal standards the Court would be construing the motion.  On July 27, 2022, Quaglin filed an opposition, arguing *inter alia* that assuming the Court intended to construe Hull's Answer as a Motion to Dismiss under Rule 12(b)(6), the Motion fails on its face because it disputes the factual allegations in the Petition.  In Response to Quaglin's opposition, on August 8, 2022, Respondent Hull filed a Reply Brief stating that his Answer was intended as a 12(b)(1) Motion.  ECF No. 23.  On August 16, 2022, the Court issued an Order construing Respondent's 12(b)(1) Motion as a Motion for Summary Judgment, "to which Quaglin will have a chance to respond."  Initially, Quaglin was given 21 days, until September 6, 2022, to review the 526 pages of Exhibits and brief an opposition to a motion for summary judgment that did not contain a concise statement of material facts, as required by the Court's local Rule 7(h).  Seven days later, on August 23, 2022, the Court ordered that Quaglin's opposition to the Motion for Summary Judgment was to be filed three days later on August 26, 2022, giving Quaglin a total of 10 days to respond to Respondent Hull's Motion for Summary Judgment.  At no point was Quaglin given any time to engage in discovery.

A hearing was held on September 29, 2022.  Quaglin appeared at the hearing, and by that time he weighed 165 pounds.  It is well documented that he weighed 210 pounds when he arrived at NNRJ, making his total weight loss at the time of the hearing 45 pounds.  At the hearing, the Court noted several times for the record that Quaglin's weight loss was concerning. During oral argument, counsel for Quaglin asked the Court to deny Respondent Hull's Motion for Summary Judgment so that Quaglin could seek discovery, but the Court instead granted the motion for summary judgment.   Before adjourning, the Court noted on the record that communications between Hull and Quaglin's attorney Joseph McBride had become heated, and therefore suggested that Quaglin's other attorney, Jonathan Gross, establish communication with Hull in the hopes of addressing the concerning issue of Quaglin's rapid weight loss.

Since the hearing, significant new evidence has emerged that supports many of the allegations in Quaglin's Petition.

After the hearing, on October 3, 2022, Gross sent an email to Hull.  Gross asked if the parties could leave the past behind them and try to resolve the serious issue of Quaglin's weight loss, which Gross assumed was a joint concern.  Hull responded with hostility and would not engage with Gross to address Quaglin's declining health, nor would Hull direct Gross towards an attorney or staff member who would.  *See* Exhibit B, emails between Gross and Hull.

As of October 21, Quaglin now weighs 162 pounds; he lost three pounds since the hearing.  *See* Exhibit A, Declaration of Christopher Quaglin.  After the summary judgment was granted, on October 3, Quaglin was seen by the Jail's doctor, Doctor James Dudley, who noted that Quaglin has celiac disease and that he is losing weight, and recommended additional Ensure drinks and for the jail to increase Quaglin's commissary allowance which is currently limited, as Quaglin is subsisting only on Ensure drinks and food purchased at the commissary,  *Id.*  The Jail

added an Ensure drink, but disregarded Dr. Dudley's request to increase Quaglin's commissary. *Id.*  Quaglin was seen by Doctor Dudley again on October 17, and Doctor Dudley said he would write a note to the U.S. Marshals recommending as a doctor that Quaglin should be transferred to a different facility.  *Id.*

On October 20, 2022, attorney Gross called NNRJ to schedule an attorney visit with Quaglin. *See* Exhibit C, Affidavit of Jonathan Gross.  Gross was told expressly by a Jail employee that there is a special "Quaglin policy" that differs from the normal Jail policies.  *Id.* As set forth in detail below, the special "Quaglin policy" directly limits and/or deprives Quaglin of constitutional rights.

In light of this new evidence, the Court should amend or alter its motion and deny summary judgment to Hull, so that the parties may engage in discovery.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 59, "[a] motion to alter or  amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "Under Rule 59(e), the court may grant a motion to amend or alter a judgment under three circumstances only: (1) if there is an 'intervening change of controlling law'; (2) if new evidence becomes available; or (3) if the judgment should be amended in order to 'correct a clear error or prevent manifest injustice.'" *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam)). The trial court has "considerable discretion" in resolving such a motion, but granting it is "an extraordinary measure." *Id.* (citing *Firestone*, 76 F.3d at 1208). The movant must not attempt to "relitigate old matters," nor "present a new legal theory that was available prior to judgment." *Id.* (quoting, respectively, *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5

(2008); *Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012)) (internal quotation marks omitted).

## ARGUMENT

**A. Since the order granting summary judgment to Hull, new evidence has become available that shows a genuine dispute of material facts regarding Quaglin's claims.**

### 1. Quaglin's weight loss

As the Court observed multiple times at the hearing on September 29, Quaglin's weight loss is concerning.  It is well documented that Quaglin weighed 210 pounds when he arrived at NNRJ.  Hull does not dispute Quaglin's weight loss, although as suggested by new evidence set forth below, he does not care.  Quaglin lost 3 pounds in three weeks since the hearing.  Exhibit A.  The Jail has done nothing to address this, and if anything, is exacerbating it by limiting his commissary allowance, against a doctor's recommendation.  *Id.*

On October 3, 2022, Quaglin was seen by a Jail doctor.  The doctor acknowledges that Quaglin has celiac disease.  *Id*.  The doctor was told that Quaglin is not eating the jail food because he suspects cross contamination with gluten and that Quaglin was subsisting on only on 3 Ensure drinks and 4 proteins bars from the Jail commissary per day.  *Id.*  The doctor recommended that Quaglin be given an additional Ensure drink and that his commissary allowance be increased.  *Id.*  Since that visit, the Jail added an Ensure drink, but has not increased his commissary allowance as the doctor recommended.  *Id.*

The doctor saw Quaglin again on October 17, 2022.  *Id.*  Quaglin asked if he would write a note to the U.S. Marshals stating that in his opinion as a physician Quaglin should be transferred to another facility.  The doctor said that he would.  *Id.*

The facts that the Jail is aware of Quaglin's serious weight loss, and is aware that Quaglin will eat food purchased at the commissary, yet continues to limit his commissary allowance

against the recommendation of its own doctor, is sufficient for a reasonable factfinder to find at least a dispute of material fact regarding Quaglin's allegation that the Jail is responsible for his weight loss.  At the very least, the Court should amend its order and deny summary judgment so that it can reopen the case and hear these recent facts and order some appropriate relief to address the fact of Quaglin's concerning weight loss.

**2. Further evidence is available showing that Hull, who is the FINAL authority for all grievances, is unreasonable and therefore the grievance system is broken.**

Since the hearing granting summary judgment, email communications show that Hull, as the final arbiter of all grievances in the prison, cannot act civilly towards Quaglin's attorneys, even to address serious life and death concerns about Quaglin's health.

On October 3, 2022, pursuant to the Court's suggestion, Quaglin's attorney Jonathan Gross reached out to Hull to try and resolve the issue of Quaglin's weight loss and Quaglin's missing discovery.  *See* Exhibit B.  Gross acknowledged that communications had been heated in the past, but offered to move forward in a professional and civil manner, especially to address the serious issue of Quaglin's health.  *Id.*  The next day, Hull responded as follows:

> Mr. Gross,
>
> I have no idea who you are and quite frankly my attorney represents the results of that hearing differently. The documentation is exhaustive and definitive. If you, in fact,  represent Quaglin ..... this is a manufactured issue. To that end I consider the matter closed and will not address this again.

*Id.*  Gross responded as follows:

> Mr. Hull,
>
> I was hoping that we could deal with this professionally.  Attached, please find my notice of appearance in Mr. Quaglin's case as proof that I indeed represent Mr. Quaglin.
>
> If you are not capable of being civil regarding the health and wellbeing of my client, please direct me to an attorney or someone who can.

*Id.* Hull responded with his usual hostility. He refused to direct Gross to another point of contact and instead insisted "I am the only point of contact," with emphasis in the original. He concluded with "I consider this matter closed and I will not address it again."

Gross responded:

Mr. Hull,

I see you maintain your position, but in the interest of civility and professionalism, I will try one final time.

The court expressed concern multiple times for Mr. Quaglin's health. The fact is, he has lost a dangerous amount of weight. We assume, as the Court did, that the parties can put aside their differences and discuss the issue in the hopes of solving this problem.

If you will not direct me to someone who can deal with this in a less emotional and more professional manner, I will have to pursue other avenues.

Please respond either with the contact information of someone who can help me resolve the issue, or else simply respond "NO."

Hull simply responded "NO."

As is plain to see from these emails, Hull is the only point of contact to address Quaglin's health. *See also* ECF. No. 1, ¶ 88 ("by my direction all calls, requests, inquiries or other communications about or associated with Inmate Quaglin are being forwarded to me."); *see also* ECF 17-3 at 5. Hull has now unequivocally stated that he considers the matter of Quaglin's weight loss "closed" even as Quaglin continues to lose weight and the Jail doctor makes recommendations that the Jail ignores. Quaglin has already lost 3 pounds since the hearing and is now down almost 50 pounds since he came to NNRJ. Hull has made clear that there is no grievance process available to Quaglin to address his weight loss issue. If Quaglin continues at the rate he is going, he will continue to suffer and ultimately die.

A reasonable factfinder could find that the grievance system is broken when presented with the new evidence of Hull's hostile emails showing that Hull, the FINAL authority over the

grievance process, cannot deal civilly with Quaglin's attorney regarding an issue of life and death.  Further, a reasonable factfinder could find that there is no grievance process because Hull, who is the FINAL authority, has expressly stated that he will not address the issue of Quaglin's health.

### 3. New evidence has emerged where NNRJ has stated that there are "Special Quaglin policies" that differ from regular jail policies.

On the morning of October 20, 2022, Gross called the prison and left a voice message identifying himself as Quaglin's attorney seeking an attorney visit for the following day.  Exhibit C.  Later that day, he received a call back from an NNRJ employee.  *Id.*  The employee said that Gross could come and visit Quaglin, but only for two hours.  Gross, who lives in Baltimore and is only one hour from the DC Jail and this Court, has to drive seven hours round trip to visit Quaglin at NNRJ.  *Id.*

Based on his recent interaction with Hull, among other things, Gross wanted to bring a paralegal or law clerk to accompany him so that he could have an additional witness at the visit in case there arose any disputes with the Jail.  *Id.*  Gross was told that he could not bring a paralegal or another attorney with him, and that Quaglin could only have an attorney visit if it was Gross, and that Gross would have to come alone.  *Id.*  Gross asked how he could arrange for another person to accompany him, even suggesting to have another attorney enter an appearance in the case.  *Id.*  The jail employee said that she had special instructions from her "Major" that Quaglin was only permitted an attorney visit the following day with Gross, and that Gross would have to come alone.  *Id.*  Gross asked if this is the normal policy or if this is a "special Quaglin policy."  *Id.*  Gross was told that it was a "Quaglin policy."  *Id.*  When Gross asked the employee to repeat herself, Gross heard some talking in the background and then the employee abruptly hung up the phone.  *Id.*

As the Court is already aware, Quaglin has been punished and is not able to make video calls with his attorneys.  The NNRJ phones only allow Quaglin 15-minute calls with his attorneys.  The new evidence shows that the Jail has "special Quaglin policies" regarding in person visits.  Further, it suggests that there may be other "special Quaglin policies" that are at this point unknown.

From the new evidence, a reasonable factfinder could find support for Quaglin's claims, including but not limited to the claims that he is being unlawfully punished as a pretrial detainee, unlawfully retaliated against, and unlawfully denied access to his attorney.

As Quaglin has provided newly available evidence that would permit a reasonable factfinder to find that, among other things, the grievance system is broken and that Quaglin is being deprived of his constitutional rights, the Court should amend its Order and deny summary judgment, and open the case so the parties can engage in discovery.  *Arnoldi v. Bd. of Trs.*, 557 F. Supp. 3d 105, 113 (D.D.C. 2021) (citing *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987)).

**B. In the alternative, the Court should amend its order granting summary judgment because the court erred by only providing Quaglin with 10 days to respond to a motion for summary judgment without any discovery.**

Pursuant to Rule 59(e), a Court may amend an order if "the judgment should be amended in order to 'correct a clear error or prevent manifest injustice.'" *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam)).  "A ruling's error is clear if, at the time it was made, a clear precedent in the Supreme Court or this circuit established its erroneous character."  *United States v. Terrell,* 402 U.S. App. D.C. 490, 493, 696 F.3d 1257, 1260 (2012).

Though the Court has discretion to construe pleadings, Federal Rule 8(e) states that "pleadings must be construed so as to do justice." Here, the Court's construction of Hull's responsive pleading, ECF No. 17, was not only unfair, but was in clear violation of the Court's Local Rules, the Federal Rules of Civil Procedure, and this circuit's precedent.

This Court has in the past required strict compliance with Rule 7(h). *See Wilkins v. District of Columbia*, Civil Action No. 17-884 (CKK), 2019 U.S. Dist. LEXIS 134308, at *7, *11-*12 (D.D.C. Aug. 9, 2019) (citing *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996) (quoting *Gardels v. CIA*, 637 F.2d 770, 773 (D.C. Cir. 1980) (addressing a prior, but materially identical version of rule)). Quaglin noted this in his opposition to Summary Judgment (ECF No. 28), but the Court never addressed the issue. Though the Court has the discretion to disregard this Court's long established strict adherence to Rule 7(h), this Court has stated that, even under normal circumstances, requiring a party to respond to a motion for summary judgment that does not include a concise statement of material facts is unfair to the party. *Id.* But these were not normal circumstances. Here, Hull never moved for summary judgment. Instead, the Court effectively moved for summary judgment on Hull's behalf by construing Hull's deficient Answer into a motion for summary judgment. If the Court has discretion to look the other way after the fact of a Rule 7(h) violation, that does not give the Court the discretion to create the situation of a Rule 7(h) violation, as it did here. *See* Federal Rule 8(e) ("Construing Pleadings: Pleadings must be construed so as to do justice.").

More significantly, the Court erred by violating Federal Rule 12(d). Federal Rule 12(d) allows the Court to construe a motion under 12(b)(6) or 12(c) as a motion for summary judgment, provided that "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

First, the Rule does not grant the Court the discretion to construe an Answer as a motion for summary judgment, as the Court did in this case. Hull's ECF No. 17 was filed as an Answer. The proper way for an Answer to be construed as a motion for summary judgment is for the party to file a motion under 12(c), in which case the Court may construe the 12(c) motion as a motion for summary judgment. But here, Hull never filed a motion under 12(c). Hull stated expressly in ECF No. 23 that he intended the Answer to be a motion under 12(b)(1), and Rule 12(d) does not grant the Court discretion to construe a motion under 12(b)(1) as a motion for summary judgment. *Webman v. Fed. Bureau of Prisons*, Civil Action No. 03-172 (CKK), 2004 U.S. Dist. LEXIS 29425, at \*15 (D.D.C. Mar. 21, 2004). In sum, the Court made a clear error in its construction of ECF No. 17 as a motion for summary judgment, and therefore the motion should have been denied.

But more significantly, Rule 12(d) expressly states that when the Court uses its discretion to construe a motion to dismiss as a motion for summary judgment, "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion," and Quaglin was not given such an opportunity. On August 16, the Court gave Quaglin 21 days to respond to a motion for summary judgment without a statement of material facts and with over 500 pages of exhibits. On August 12, the Jail ordered Quaglin transferred to medical and Quaglin was still in medical when the Court gave its order converting ECF 17 into a motion for summary judgment. Seven days later, on August 23, when Quaglin was still in medical and had only14 days remaining to respond, the Court, knowing Quaglin was in medical, suddenly cut his time short to 3 days. In the end, Quaglin had only had 10 days to respond to a motion for summary judgment with over 500 pages of Hull's exhibits, and hundreds of pages of his own grievances and notes to

organize and review.  This is unfair under any circumstances, more so given that Quaglin is a prisoner with declining health in medical on the Jail's orders.

At the hearing, Quaglin's counsel asked the Court to deny Quaglin's pending motion for preliminary injunction but, in the interest of fairness, deny Hull's motion for summary judgment to give Quaglin time to engage in minimal discovery to test the sufficiency of Hull's evidence and to gather evidence of his own.

Granting summary judgment without an opportunity for discovery was a clear error as it goes against precedent in this Circuit.  *See Hurd v. District of Columbia*, 431 U.S. App. D.C. 83, 98-99, 864 F.3d 671, 686-87 (2017).

> In order to go beyond testing the adequacy of the allegations of the complaint, a district court must follow the procedures for converting a motion to dismiss into one for summary judgment. The Federal Rules prescribe the process for doing so: The court must give the parties notice of the court's intention to convert the motion and a reasonable opportunity to discover and present relevant evidence. Fed. R. Civ. P. 12(d)…*See also Kim*, 632 F.3d at 719; *3M Co. v. Boulter*, 842 F. Supp. 2d 85, 96-97 (D.D.C. 2012).  As a leading treatise explains, "[t]he court, *sua sponte*, may convert a motion under Rule 12(b)(6) into one for summary judgment, but the conversion by the district judge should be exercised with great caution and attention to the parties' procedural rights." 5C FED. PRAC. & PROC. § 1366, *Conversion of a Rule 12(b)(6) Motion Into a Summary Judgment Motion* (3d ed.)."  The district court has discretion whether to consider affidavits or other factual matter outside the pleadings but, as Rule 12(d)'s use of the obligatory "must" makes plain, a court that decides to consider extra-pleading material is required to convert the motion to dismiss into one for summary judgment, with attendant procedural protections. In such a case, the motion is decided under Rule 56's standard, keyed to legal and evidentiary sufficiency, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986), rather than the Rule 12(b)(6) standard of plausible pleading, *see Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868.

*Id.*  Here, as in *Hurd*, the Court did not take the requisite steps for looking beyond the complaint to consider the material that Hull proffered.

> To do so, it would have had to notify Hurd of its intention to consider factual submissions and give him the opportunity to discover and offer evidence of his own—whether to rebut any facts or negative inferences the district court might

draw from the government's exhibits or to provide facts and context in his own support. See Fed. R. Civ P. 12(d), 56.

Here, Quaglin was not given no notice of the Court's intention to construe the motion as one for summary judgment.  The Court initially gave Quaglin only 21 days to respond, but then on day 7 the court suddenly and without notice shortened the time and gave Quaglin only 3 days, all while Quaglin was in medical on the Jail's orders.  Quaglin was not given any opportunity to discover and offer evidence of his own, to test the sufficiency of Hull's proffered evidence, or to provide facts and context in his own support.  *See also Boser v. Keramati*, No. 22-513 (EGS), 2022 U.S. Dist. LEXIS 153301, at *7 (D.D.C. Aug. 25, 2022) ("The Court agrees that Mr. Boser has not had a 'reasonable opportunity to present all material that is pertinent' to his medical malpractice claim, Fed. R. Civ. P. 12(d); since no discovery has taken place. Accordingly, the Court will not consider 'any matters outside of the pleadings' and will not convert the motion to dismiss into a motion for summary judgment."); *Yazzie v. NOW*, Civil Action No. 19-3845 (RDM), 2021 U.S. Dist. LEXIS 60935, at *23-24 (D.D.C. Mar. 30, 2021) ("In exercising its discretion, the Court "must assure itself that summary judgment treatment would be fair to both parties," *Bowe-Connor*, 845 F. Supp. 2d at 85-86, and the Court must also ensure that "[a]ll parties . . . be given a reasonable opportunity to present all the material that is pertinent to the motion," Fed. R. Civ. P. 12(d). Here Yazzie has not yet been afforded an opportunity to take discovery that might bear on the question of whether NOW had at least fifteen employees during Yazzie's tenure as Vice President, and, accordingly, treating the motion as one for summary judgment would unfairly prejudice her."); *Jones v. Lattimer*, 29 F. Supp. 3d 5, 17 (D.D.C. 2014) ("The plaintiff in this case has requested discovery before consideration of summary judgment in order to "shed light on the veracity of defendant Lattimer's allegations . . . [in order] to

adequately oppose defendant Lattimer's motion for summary judgment.");  *Ryan-White v. Blank*, 922 F. Supp. 2d 19, 25 (D.D.C. 2013).

A reviewing court should treat a motion to dismiss as one for summary judgment "if extra-pleading evidence is comprehensive and will enable a rational determination of a summary judgment motion." *Alston v. Johnson*, 208 F. Supp. 3d 293, 298 (D.D.C. 2016). Here, the extra pleading evidence was not comprehensive, as Quaglin was not given enough time to properly organize and submit his own evidence or seek discovery that could shed light on the hundreds of pages of Hull's evidence.  The "touchstone is fairness and whether consideration of summary judgment is appropriate, in light of the nature of the extra-pleading material submitted, the parties' access to sources of proof, and the parties' concomitant opportunity to present evidence in support or opposition to summary judgment."  *Robinson v. Howard Univ., Inc.*, 335 F. Supp. 3d 13, 23 (D.D.C. 2018) (citation omitted).  Here, extra-pleading material was over 500 pages, including hearsay evidence and self-serving affidavits.  Quaglin had limited if any access to the sources of proof, and Quaglin only had 10 days to review NNRJ's evidence and to present what evidence he had, while he was in medical on the Jail's orders.  Further, summary judgment was inappropriate because, unlike in *Robinson*, Quaglin's claims did not fall under the Rule 12(b)(6) dismissal standard – the Court acknowledged that ECF No. 17 included factual disputes - and the Rule 56 summary judgment standard – ECF No. 17 did not include a statement of material facts as required by Local Rule 7(h).  *Robinson,* 335 F. Supp. at 23.

Unlike in *Robinson,* Quaglin requested additional discovery and explained how the new facts sought "are necessary to the litigation."  *Id.*  Specifically, Quaglin requested discovery to test the sufficiency of the evidence provided by NNRJ, which included self-serving affidavits, documents with questionable authenticity, and hearsay.  Especially in light of the new evidence

that there were "Special Quaglin Policies," it is more than mere "speculation that discovery will produce material evidence." *Id.* (citing *Harrison v. Office of the Architect of the Capitol*, 281 F.R.D. 49, 52 (D.D.C. 2012)).

Ten days to respond to the motion for summary judgment was insufficient, especially without the opportunity to engage in any discovery, and therefore, respectfully, the Court made a clear error in construing ECF No. 17 as a motion for summary judgment. Accordingly, the Court should alter or amend its judgment to deny summary judgment and reopen the case for discovery.

<u>**CONCLUSION**</u>

For the aforementioned reasons, the Court should alter or amend its order granting summary judgment to Hull, and instead deny summary judgment.

Dated: October 23, 2022

<div style="margin-left: 40%;">

Respectfully Submitted,

/s/Jonathan Gross
Bar ID: MD0162
2833 Smith Ave. Suite 331
Baltimore, MD 21209
(443) 813-0141
jon@clevengerfirm.com

Joseph D. McBride, Esq.
Bar ID:  NY0403
THE MCBRIDE LAW FIRM, PLLC
99 Park Avenue, 6th Floor
New York, NY 10016
p: (917) 757-9537
e: jmcbride@mcbridelawnyc.com

</div>

## **CERTIFICATE OF ELECTRONIC SERVICE**

I hereby certify that on October 23, 2022, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF System, with consequent service on all parties.

/s/Jonathan Gross