# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTOPHER JOSEPH QUAGLIN, | : |
| Petitioner, | : |
| v. | : Civil Action No. 1:22cv01154-TNM |
| MERRICK GARLAND, et al., | : |
| Respondents. | : |

### OPPOSITION TO PETITIONER'S MOTION TO ALTER OR AMEND ORDER GRANTING SUMMARY JUDGMENT TO RESPONDENT HULL

Respondent Ted Hull ("Hull"), Superintendent of the Northern Neck Regional Jail ("NNRJ"), by counsel, hereby opposes Petitioner Christopher Quaglin's ("Quaglin") Motion to Alter or Amend Order Granting Motion for Summary Judgment to Respondent Hull (Doc. 36).

### I. QUAGLIN'S ALLEGED "NEW EVIDENCE" DOES NOT WARRANT THE COURT'S AMENDING ITS SUMMARY JUDGMENT DECISION

#### A. Quaglin's Current Medical Status

Quaglin prevaricates. As set forth in Dr. Dudley's Supplemental Affidavit, attached hereto as Ex. 1, and evidenced in Quaglin's medical record, attached hereto as Ex. 2, since the September 29, 2022 hearing, Quaglin's weight has stabilized. His BMI is appropriate, his physique remains muscular, and he works out. Quaglin continues to be offered three gluten-free meal trays per day and now receives four Ensures a day.

Quaglin undergoes weight checks approximately three times per week. In addition, Quaglin regularly sees a jail physician. On October 3, 2022 Dr. Dudley saw Quaglin and added an extra can of Ensure. Dr. Dudley also suggested, if possible, an increase to Quaglin's commissary allowance; however, Dr. Dudley has no knowledge of how much commissary

inmates are allowed or whether the amount can be increased for a specific inmate.  Ex. 1.  Like all NNRJ inmates, Quaglin is permitted to spend $110/week for commissary items.  Ex. 3, Hull Second Supplemental Affidavit.  Quaglin's commissary orders over the last month reveal purchases of numerous food items, including protein bars, tuna, sardines, rice, and snack foods.  Ex. 4, Commissary Orders.

On October 13, 2022, Quaglin was seen by NNRJ physician Dr. Cleary. Dr. Cleary's note indicates that Quaglin left the appointment in anger.[1]  Ex. 2. Dr. Dudley saw Quaglin again on October 19, 2022.  Per Dr. Dudley's note, "[a]t this time, he is gaining a little (weight). He is doing stretches and strength training. He reports he is only able to maintain weight due to eating commissary and getting Ensure."  Dr. Dudley indicated that Mr. Quaglin's weight was "stable" and "from the standpoint of his physical health and weight, he is stable and is receiving adequate accommodation."  Dr. Dudley also indicated that "I believe his health is not in jeopardy with the current plan and housing." Ex. 1.

Finally, contrary to Quaglin's representation to the Court, Dr. Dudley did not tell Quaglin that he would "write a note to the U.S. Marshals [sic] recommending as a doctor that Quaglin should be transferred to a different facility." (Doc. 36, p. 4) Rather, on October 19, 2022 Dr. Dudley noted in Quaglin's medical record that Quaglin asked Dr. Dudley "to certify that NNRJ is unable to meet his medical needs."  Ex. 2. At no time, did Dr. Dudley ever agree to contact the U.S. Marshal's Service and recommend that Mr. Quaglin be transferred. Ex. 1.

---

[1] Quaglin qualified for the honor pod on October 12, 2022.  The next day, John Blake, the medical officer on duty, was supervising doctor call when Quaglin began yelling at Dr. Cleary. Quaglin ignored an order to quiet down and started yelling louder, followed by yelling "fuck you" directed at Dr. Cleary and EMT Amber Huffman. Quaglin was returned to his housing unit. As a result of this incident, he remained in the general population but was removed from the honor pod.  Ex. 5, 10/13/22 Incident Reports.

### B. Quaglin's Grievance Status

Since September 29, 2022 Quaglin has filed numerous grievances. In each instance, the appropriate NNRJ administrator responds. Quaglin appeals some of them to Hull, and chooses not to appeal others. Ex. 6, Grievances. One thing that is consistent, however, is that Quaglin's grievances continue to be repetitive. On October 17, 2022, NNRJ Deputy Superintendent Lewis informed Quaglin in writing that grievances concerning certain issues would no longer be accepted. She noted that Quaglin appealed some of his concerns to Hull, and thus the matter was resolved, and for others Quaglin chose not to appeal. Ex. 7, Letter.

Drilled down, Quaglin's real issue is that NNRJ's grievance procedure establishes the Superintendent as the final arbiter. Offering no legal basis to challenge that procedure, Quaglin asserts that the process is futile because Superintendent Hull has foreclosed his ability to grieve his weight loss. As the Court's decision reflects, NNRJ has made every reasonable effort to ensure Quaglin's receipt of a gluten-free diet devised by registered nutritionists, on trays prepared specifically for Quaglin, and with additional steps designed to keep his food free of cross-contamination. Nevertheless, Quaglin refuses to consume anything besides Ensure and items he purchases from the commissary. Quaglin continues to be followed by Dr. Dudley, who attests to Quaglin's health. There is nothing left for Superintendent Hull to do or any other response he can provide to Quaglin on this issue, save for playing Quaglin's game of beating a dead horse. It is indisputable that Quaglin avails himself of the grievance procedure, and picks and chooses when to appeal. His own actions undermine his claim of futility.

Next, there are no "special Quaglin policies" that have limited Quaglin's contact visits with his counsel. Because of COVID-19, NNRJ has had to convert most of the space previously dedicated to contact visitation into virtual courtrooms where video arraignments take place. Ex.

3, Hull Supplemental Affidavit. This limits the number of contact visitation areas and has required NNRJ to institute a reservation system for all contact visits. Contact visits at NNRJ are permitted for members of the bar, members of law enforcement, and probation officers. *Id*.

When Quaglin's counsel called to arrange a contact visit, he was offered available timeslots and chose a two-hour slot from 9:00 a.m. to 11:00 a.m. on October 21, 2022. Prior to that call, Quaglin had submitted an Inmate Request Form notifying NNRJ administration that he was expecting "his lawyer and team" to visit. Ex. 8, Lewis Aff. Deputy Superintendent Lewis responded to Quaglin that his attorney would be allowed a contact visit but that "the team may not be approved for contact." Ex. 9, Inmate Request Form 10/7/22. Apropos of this, Lewis informed Karli Taylor, who coordinates contact visits, that Quaglin's attorney would be permitted a contact visit, but that if others came with him, they would not be permitted to participate. Thus, when Quaglin's counsel asked Ms. Taylor if he could bring his paralegal, Ms. Taylor advised Quaglin's counsel that his paralegal would not be permitted to participate in the contact visit. Ex. 8, Lewis Aff.

Finally, Quaglin has been informed multiple times that NNRJ does not have his legal materials. As the Court requested at the September 29, 2022 hearing, the undersigned agreed to pass on to Superintendent Hull any discovery materials provided by Quaglin's counsel, so that they could be given to Quaglin. Nothing has been provided to the undersigned via this procedure from the date of the hearing, September 29, 2022 until the date of this filing.

## II. THE COURT DID NOT ERR IN CONSTRUING HULL'S RESPONSE AS A MOTION FOR SUMMARY JUDGMENT AND GRANTING THE MOTION

Quaglin's attempt to convince the Court that its decision granting summary judgment in Hull's favor was in error lacks merit.

First, Quaglin's claim that his time to respond was unfairly limited is disingenuous. Quaglin takes issue with the number of records Hull provided and demeans the evidence as consisting of "self-serving affidavits, documents with questionable authenticity, and hearsay." (Doc. 36, p. 14) The records presented addressed each specific claim outlined in Quaglin's habeas petition. The evidence consisted almost entirely of Quaglin's jail and medical records, NNRJ policies, and third-party vendor diet guidelines and recommendations. All of these records were authenticated by NNRJ's records custodian. Quaglin had three months after Hull's June 7, 2022 initial response to review and consider this evidence.

Further, two and a half months after Hull's response and after the Court converted it to a motion for summary judgment, the Court expedited Quaglin's time to respond (and Hull's time within which to reply) for one reason only: on August 23, 2022, Quaglin filed an Emergency Motion for Preliminary Injunction and Request for Hearing (Doc. 26). In that Motion, Quaglin stated, "the urgency of the situation cannot be understated," and "[t]he Court must act swiftly to review this motion and order his immediate release, as Mr. Quaglin is in imminent danger of severe bodily harm or death." (Doc. 26, p. 1). Quaglin wanted it both ways then, and he wants it both ways now. To wit, Quaglin continues to press the need for expedience, writing that "if he continues at the rate he is going, he will continue to suffer and ultimately die," while at the same time seeking to delay the process with a request for discovery. (Doc. 37, p. 7).

Despite his protests, Quaglin has no right to discovery.  This Court notes that inmates filing petitions for habeas corpus relief are not automatically entitled to discovery.  In *Omar v. Harvey*, 514 F. Supp. 2d 74 (D.D.C. 2007), the Court stated:

> "There is no higher duty of a court, under our constitutional system, than a careful processing and adjudication of petitions for writs of habeas corpus." *Harris v. Nelson*, 394 U.S. 286, 292, 89 S. Ct. 1082, 22 L. Ed. 2d 281 (1969). Once a court orders a response to a writ for habeas corpus, "[d]iscovery is available only if the judge in the exercise of his discretion and for good cause shown grants leave." *Lonchar v. Thomas*, 517 U.S. 314, 326, 116 S. Ct. 1293, 134 L. Ed. 2d 440 (1996). Aware that "confinement sometimes induces fantasy which has its basis in the paranoia of prison rather than in fact" the Supreme Court advised that "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Harris*, 394 U.S. at 300.

*Id*. at 78.

*See Johnson v. Bobby*, No. 2:08-cv-55, 2018 U.S. Dist. LEXIS 44709, * 16 (S.D.Oh. Mar. 19, 2018) (noting "[t]he discovery processes contained in the Federal Rules of Civil Procedure do not automatically apply in habeas corpus actions. 'A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course.'") (quoting *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997)).

With regard to Quaglin's request for discovery, this Court made clear at the September 29, 2022 hearing that Quaglin did not request discovery until that date.  Thus, the standard cited above, combining the Court's discretion with good cause, does not compel discovery in this case.

Finally, the law Quaglin relies on to assert a right to discovery actually supports the Court's decision to grant summary judgment without it, as "the evidence presented was "comprehensive and enabled "a rational determination" of Hull's summary judgment motion. *Alston v. Johnson*, 208 F.3d 293, 298 (D.D.C. 2016).  In *Alston*, the Court set forth:

> "The decision to convert a motion to dismiss into a motion for summary judgment is committed to the sound discretion of the trial court." *Ryan-White v. Blank*, 922 F. Supp. 2d 19, 22 (D.D.C. 2013) (quoting *Flynn v. Tiede-Zoeller, Inc.*, 412 F. Supp. 2d 46, 50 (D.D.C. 2006)) (internal quotation marks omitted). A court should convert the motion "[i]f extra-pleading evidence 'is comprehensive and will enable a rational determination of a summary judgment motion,'" but, when extra-pleading evidence is "scanty, incomplete, or inconclusive, the district court is more likely to decline to convert to summary judgment and permit further discovery." *Ramsey v. Moniz*, 75 F. Supp. 3d 29, 40 (D.D.C. 2014) (internal quotation marks omitted).

*Id*.

Here, the evidence before the Court was "comprehensive," providing the Court a full and complete record upon which to rule. The Court had evidence pertinent to every claim raised in Quaglin's habeas petition, from exhaustion of administrative remedies, to Fifth Amendment claims regarding "solitary confinement" and alleged deliberate indifference to medical needs, disciplinary records, and to First and Sixth Amendment claims. Quaglin states only that he "requested discovery to test the sufficiency of the evidence provided by NNRJ, which included self-serving affidavits, documents with questionable authenticity, and hearsay." (Doc. 36, p. 14). Quaglin's bald assertions of what will be gained from discovery do not suffice and do not offer the Court good cause to allow Quaglin to go on a fishing expedition. *See Johnson v. Bobby*, 2018 U.S. Dist. LEXIS 44709, *17 ("In keeping with the well-settled principle that habeas petitioners are not entitled to go on fishing expeditions in search of damaging evidence, this 'good cause' standard requires the petitioner to at least attempt to identify what he expects to uncover through his discovery requests." (citing *Williams v. Bagley, 380* F.3d 932, 976 (6th Cir. 2004)). The record before the Court thoroughly evidences the circumstances of Quaglin's confinement at NNRJ.

In sum, the Court properly exercised its discretion to convert Hull's Response to a Motion for Summary Judgment and to rely on the comprehensive evidence in the record to make a rational determination that the motion should be granted.

### III.   CONCLUSION

For these reasons and those set forth previously, Respondent Superintendent Ted Hull respectfully requests this Court to deny Petitioner's Motion to Alter or Amend Order Granting Motion for Summary Judgment to Respondent Hull (Doc. 36).

SUPERINTENDENT TED HULL

By: _____/s/_____
               Of Counsel

Jeff W. Rosen, Esq., D.C. Bar No. 383153
PENDER & COWARD, P.C.
222 Central Park Avenue, Suite 400
Virginia Beach, VA 23462
Phone: (757) 490-6253
Fax:    (757) 490-6253
jrosen@pendercoward.com
*Counsel for Hull*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 4th day of November, 2022, I will electronically file the foregoing ***Opposition to Petitioner's Motion to Alter or Amend Order Granting Motion for Summary Judgment to Respondent Hull*** with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) to the following:

Joseph D. McBride, Esq. (NY Bar #0403)
THE MCBRIDE LAW FIRM, PLLC
99 Park Avenue, 6th Floor
New York, NY 10016
Phone: (917) 757-9537
jmcbride@mcbridelawnyc.com
*Counsel for Petitioner*

Jonathan Gross, Esq. (MD Bar #0162)
2833 Smith Ave., Suite 331
Baltimore, MD 21209
Phone: (443) 813-0141
jon@clevengerfirm.com
*Counsel for Petitioner*

Stephanie R. Johnson, Esq. (D.C. Bar #1632338)
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-7874
Stephanie.Johnson5@usdoj.gov
*Counsel for Garland*

                                                         /s/
                        Jeff W. Rosen, Esq., D.C. Bar #383153
                        PENDER & COWARD, P.C.
                        222 Central Park Avenue, Suite 400
                        Virginia Beach, VA 23462
                        Phone: (757) 490-6253
                        Fax:    (757) 490-6253
                        jrosen@pendercoward.com
                        *Counsel for Hull*

*Quaglin v. Garland, et al.*          Case No. 1:22cv01154          PENDER & COWARD, P.C.
                                                                                             WWW.PENDERCOWARD.COM
Page **9** of **9**